[Cite as *In re Shugert*, 2012-Ohio-1805.]

COURT OF APPEALS
GUERNSEY COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|                       |   |                          |
|-----------------------|---|--------------------------|
| IN THE MATTER OF:     | : | JUDGES:                  |
|                       | : | William B. Hoffman, P.J. |
|                       | : | Sheila G. Farmer, J.     |
| KYLA SHUGERT          | : | Julie A. Edwards, J.     |
|                       | : |                          |
|                       | : | Case No. 11CA08          |
|                       | : |                          |
|                       | : |                          |
|                       | : |                          |
|                       | : | O P I N I O N            |

CHARACTER OF PROCEEDING:  Civil Appeal from Guernsey County
Court of Common, Juvenile Division,
Pleas Case No. 10JG00227

JUDGMENT:  Affirmed

DATE OF JUDGMENT ENTRY:  April 18, 2012

APPEARANCES:

For Plaintiff-Appellee                  For Defendant-Appellant

ANITA NEWHART                           LINDSEY K. DONEHUE
103 Hillside Way                        116 Southgate Parkway
Marietta, Ohio  43750                   P.O. Box 464
                                        Cambridge, Ohio  43725

*Edwards, J.*

{¶1} Appellant Robert Shugert, appeals from the March 2, 2011, Journal Entry of the Guernsey County Court of Common Pleas, Juvenile Division ordering him to pay $1,885.55 in child support.

<u>STATEMENT OF THE FACTS AND CASE</u>

{¶2} Kyla Shugert (DOB 9/12/06) is the biological child of appellant Robert Shugert and appellee Katie Shugert. While appellant and appellee were married at one point, Kyla was born after the parties' divorced in 2005. In the divorce case, pursuant to the agreement of the parties, appellant was named residential parent and legal custodian of the parties' oldest child.

{¶3} On April 29, 2010, appellant filed a Complaint for Determination of Parental Rights and Responsibilities, seeking legal custody of Kyla. On July 30, 2011, a Notice of Paternity was filed indicating that DNA testing had been completed and had shown that appellant was Kyla's father.

{¶4} A hearing on appellant's motion commenced on September 22, 2010 and was continued to November 18, 2010 and February 10, 2011. At the hearing, testimony was adduced that appellee's 2006 1040 showed that she received $48,650.00 in spousal support from appellant. Appellee testified that she wrote off $10,407.00 of such amount as a business loss using her spousal support. Appellee had an art and design business at the time. Appellee also testified that, in 2007, she received $60,000.00 in spousal support and that, in 2008, she received $45,000.00 in spousal support. When asked if there was a time when she might have received more spousal support than what she had declared on her tax returns, appellee indicated that it was possible.

{¶5} At the hearing, appellee's tax returns for 2007 through 2009 were admitted into evidence. The tax returns show that appellee claimed a business loss of $12,881.00 in 2007 and that her adjusted gross income for that year was $47,118.92. Appellee's 2008 tax return shows that she claimed a $20,726.40 business loss and adjusted gross income for 2008 of $26,571.60. Finally, appellee's 2009 tax return indicates a business loss of $10,292.00 and adjusted gross income of $35,965.51.

{¶6} At the hearing on November 18, 2010, appellee testified that she was an income tracker with American Income, an insurance company, and worked on commission. She testified that she had been with American Income Life for about a month and that she had received two weeks of pay. When asked, appellee testified that she had earned $4,000.00 before taxes in those two weeks which was above average. The following is an excerpt from appellee's testimony:

{¶7} "Okay. And is this what you expect to make every two months - - I'm sorry, every two weeks - - strike that - - every week?

{¶8} "A. The average could be about - - about 11 to $1500, I believe, but I've been above average to this point. And I have no reason to believe that I would fall below average." Transcript from November 18, 2010 hearing at 396. Appellee testified that she was on probation for the first ninety (90) days of her employment.

{¶9} At the continuation of the hearing on February 10, 2011, appellee testified that her average income so far from her job with American Income Life varied greatly and averaged approximately $1,000.00 a week before taxes. She indicated that she was scheduled for a promotion on the following Monday.

{¶10} Appellant testified that he operated a beef cattle operation and was self-employed with three employees. He testified that he had been self-employed since he graduated from college in 1988. Appellant's tax returns for 2007 through 2009 were admitted into evidence. His 2007 tax return indicates that appellant's adjusted gross income was $12,749.00 and that he had a depreciation/section 179 expense deduction of $173,736.00, for a total of $186,485.00. Appellant's 2008 tax return shows that appellant's adjusted gross income was $73,997.00 and that he had a depreciation/section 179 expense deduction of $143,636.00 for a total of $217,633.00. Finally, appellant's 2009 tax return states that appellant's adjusted gross income was $74,673.00 that he had a depreciation/section 179 expense deduction of $286,296.00 for a total of $360,969.00.

{¶11} The following testimony was adduced when appellant was questioned about his tax returns:

{¶12} "Q. Could you please identify A, B, and C specifically?

{¶13} "A. A are the - - my 2007 tax returns.  B is the 2008.  C is 2009.

{¶14} "Q. Okay.  And you've had the opportunity to look through them.  It appears, though, that there are no Schedule K's.  Now, you have a partnership interest, do you not, in one of your businesses?

{¶15} "A. Which one?

{¶16} "Q. I don't know which one.  I believe that may actually be a K & S Limited Partnership.

{¶17} "A. I own ground in a K & S Limited Partnership, and that - -

{¶18} "Q. And is there any reason why you didn't provide all the documents and all the pages?

{¶19} "A. Page 13 - - no.  Wait a minute.  It says Page 2, income or loss from partnerships and S corporations.  And then it lists the partnerships that I own part of.

{¶20} "Q. Okay.  And do you have the K-1's anywhere in there?  And which - - which particular tax return is that? '07?  '08?

{¶21} "A. 2009.

{¶22} "Q. '09, okay.

{¶23} "A. I think the K-1's are - - are transferred, the income from the K-1, onto the column right below where you list - - where the partnerships are listed.

{¶24} "Q. Okay.  And what other partnerships do you have?

{¶25} "A. Other than the –

{¶26} "Q. Other than the K & S.

{¶27} "A. - - the K & S.

{¶28} "Q. Uh-huh.

{¶29} "A. I have one called Profitable Sire, LLC.  I have an Eagle Creek Landing Cattle Company.  And there's one listed on here, United States Natural Gas fund, which was simply an investment.

{¶30} "Q. Okay.  So you're not an active - - you're not active in U.S. Gas?

{¶31} "A. I sold my interest in that.

{¶32} "Q. The other two, could you tell us a little bit more about what those are.

{¶33} "A. The Profitable, LLC, is a partnership with other cattlemen that owns interest in herd sires.

**{¶34}** "Q. And how many partners - - how many individual partners are there?

**{¶35}** "A. I don't know for sure, but probably a dozen.

**{¶36}** "Q. Okay. Okay.

**{¶37}** "A. It's since been dissolved.

**{¶38}** "Q. that's been dissolved?

**{¶39}** "A. Yep.

**{¶40}** "Q. Do you know when that was dissolved?

**{¶41}** "A. Sometime in 2010.

**{¶42}** "Q. Okay.  And you said you sold off the U.S. Natural Gas Fund?

**{¶43}** "A. Yeah.

**{¶44}** "Q. So tell me about Eagle Creek.

**{¶45}** "A. Eagle Creek is a partnership with myself and a partner of mine now, Steve Harris, that was formed to buy real estate basically, buy - - buy land to run cattle on.  He's my partner that owns cattle and I work with every day, and we've decided to buy some real estate together.

**{¶46}** "Q. Okay.  That's instead of renting real estate for - -

**{¶47}** "A. Right.

**{¶48}** "Q. - - grazing area or - -

**{¶49}** "A. Correct.

**{¶50}** "Q. Okay.  And is that - - do you know when that one was created?

**{¶51}** "A. I'm going to guess four or five years ago.  I'm not sure of the exact date." Transcript of February 10, 2011 hearing at 524-526.

{¶52} Pursuant to a Journal Entry filed on March 2, 2011, the trial court ordered appellant to pay child support for Kyla in the amount of $1,885.55 per month plus administrative charges of $37.74 per month for a total of $1,923.26 without medical insurance or $1,815.67 per month plus administrative charges of $36.31 for a total of $1,851.98 for support plus insurance. The trial court, in its Journal Entry, used an average adjusted gross income for child support purposes of $255,029.00 for appellant and $36,552.00 for appellee.

{¶53} Appellant now raises the following assignment of error on appeal:

{¶54} "THE TRIAL COURT'S CALCULATION OF CHILD SUPPORT IS AN ABUSE OF DISCRETION."

I

{¶55} Appellant, in his sole assignment of error, argues that the trial court abused its discretion in its calculation of child support.  We disagree.

{¶56} An appellate court reviews child support issues under an abuse-of-discretion standard. See *Pauly v. Pauly,* 80 Ohio St.3d 386, 390, 686 N.E.2d 1108 (1997). The term 'abuse of discretion' connotes more than an error of law or judgment, it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).  Moreover, as long as the decision of the trial court is supported by some competent, credible evidence, the reviewing court will not disturb it. *Masitto v. Masitto*, 22 Ohio St.3d 63, 488 N.E.2d 857 (1983).

{¶57} Appellant initially argues that the trial court erred in failing to include appellee's employment income as gross income in determining child support. Appellant

notes that appellee, at the November 18, 2010 hearing, testified that she had been employed for one month as of such date and that her earnings were $4,000.00 for two weeks pay, which was above average. Appellant also notes that appellee testified that her average pay could be $1,100.00 a week to $1,500.00 a week, but that she had been above average and did not expect to fall below average. Finally, appellant emphasizes that appellee, at the February 10, 2011 hearing, testified that she was earning $1,000.00 a week and was expecting a promotion. As is stated above, the trial court used an average adjusted gross income for child support purposes of $36,552.00 for appellee. Such figure was arrived at by averaging appellee's adjusted gross incomes for the years from 2007 through 2009. As is stated above, her adjusted gross income for 2007 was $47,118.92, her adjusted gross income for 2008 was $26,571.60, and her adjusted gross income for 2009 was $35,965.51.

{¶58} R.C. 3119.01(C)(7) defines gross income, in relevant part, as follows: "(7) "Gross income" means, except as excluded in division (C)(7) of this section, the total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable, and includes income from salaries, wages, overtime pay, and bonuses to the extent described in division (D) of section 3119.05 of the Revised Code; commissions; royalties; tips; rents; dividends; severance pay; pensions; interest; trust income; annuities; social security benefits, including retirement, disability, and survivor benefits that are not means-tested; workers' compensation benefits; unemployment insurance benefits; disability insurance benefits; benefits that are not means-tested and that are received by and in the possession of the veteran who is the beneficiary for any service-connected disability under a program or law

administered by the United States department of veterans' affairs or veterans' administration; spousal support actually received; and all other sources of income…"

{¶59} We find that the trial court did not abuse its discretion in not including appellee's employment income as gross income because such decision was not arbitrary, unconscionable or unreasonable. As noted by appellee, appellee only worked six to eight weeks in the 2010 calendar year. Moreover, as of the date of the final hearing date on February 10, 2011, appellee had only been employed for four months. Appellee's tax returns for 2007 through 2009 show that the only income she claimed for such years, with the exception of $2,298.00 in "other income" for 2007 and $1,258.37 for "other income" for 2009, was spousal support. Appellee, therefore, lacked a continuous work history.

{¶60} Appellant next maintains that the trial court erred in including appellant's business depreciation as income. When determining the gross income of a self-employed parent, such as appellant, the trial court is to deduct ordinary and necessary expenses from the parent's gross receipts. R.C. 3119.01(C)(13). Pursuant to R.C. 3119.01(C)(9)(b), ordinary and necessary expenses "[do] not include depreciation expenses and other noncash items that are allowed as deductions on any federal tax return of the parent or the parent's business," except as "specifically included in 'ordinary and necessary expenses incurred in generating gross receipts' by division (C)(9)(a) of this section[.]" In turn, R.C. 3119.01(C)(9)(a) defines ordinary and necessary expenses as "actual cash items expended * * * and includes depreciation expenses of business equipment." As noted by the court in *Foster v. Foster,* 150 Ohio App.3d 298, 2002-Ohio-6390, 780 N.E.2d 104 at ¶ 23 (12th Dist.), "Absent evidence

that the depreciation deduction represents actual cash expenses incurred in the year that the deduction was taken, R.C. 3119.01(C)(9) mandates that the depreciation deduction be included in the parent's gross income for that year."

**{¶61}** Appellant maintains that the depreciation listed on his tax returns should not have been included as income. However, in the case sub judice, appellant admits that he did not present any evidence backing up the depreciation information contained on his tax returns and did not present any testimony or evidence to the trial court to show what expenses were "ordinary and necessary." As noted by appellees "[t]here was no testimony offered on behalf of the appellant for any purchases of new equipment or for 'actual ordinary and necessary expenses.'" We find, therefore, that the trial court did not abuse its discretion in including appellant's business depreciation as income. See *Brown v. Brown*, 5th Dist. No. 2008 CA 0111, 2009-Ohio-4913.

**{¶62}** Appellant finally argues that the trial court erred in categorizing appellant's income as employment income as opposed to self-employment income. Appellant, who testified that he had been self-employed since 1988, specifically contends that such error caused him not to receive the 5.6% self-employment deduction permitted by R.C. 3119.022. The child support worksheet provided in R.C. 3119.022 provides for a deduction from gross income for self-employed individuals in the amount of 5.6% of adjusted gross income or the actual marginal difference between the actual tax rate paid by the self-employed individual and the F.I.C.A. rate. It is clear from the child support guideline worksheet in R.C. 3119.022 that this deduction applies only to the adjusted gross income received from self-employment. It is not intended to be

deducted from capital gains income and/or depreciation expenses reported on a tax return but added back into income by a trial court for child support purposes.

**{¶63}** Appellant only reported profit from self-employment on his 2007 tax return and not on his 2008 and 2009 tax returns. (The trial court calculated his income for child support purposes using an average of his incomes for the years 2007, 2008 and 2009.) On his 2007 Schedule SE he reports $10,538.00 in net earnings from self-employment and calculated his self-employment tax at $1,612.00 which is a tax rate of 15.3%. Half of $1,612.00, which is $806.00, was subtracted from the 2007 income of appellant on his tax return to give him his adjusted gross income for 2007. That 2007 adjusted gross income figure was what the trial court used in calculating child support. $806.00 is what he was entitled to deduct from his net self employment earnings on the child support guideline worksheet. On the worksheet, he was entitled to deduct the actual marginal difference between the actual rate paid by him and the F.I.C.A. rate. The actual rate paid by him was 15.3%. The F.I.C.A. rate for 2007 was 7.65% (6.2% for Social Security and 1.45% for Medicare). The marginal difference is 7.65%. 7.65% of $10,538.00 is $806.00. In other words appellant, in the trial court's calculations, received the deduction he was entitled to under R.C. 3119.022.

**{¶64}** Appellant did not attach a Schedule SE to either his 2008 or 2009 tax return and did not take a deduction from his income for such years for any self-employment taxes, nor is he entitled to take any such deduction from the figures used by the trial court in calculating child support.

{¶65} Appellant's sole assignment of error is, therefore, overruled.

{¶66} Accordingly, the judgment of the Guernsey County Court of Common Pleas, Juvenile Division is affirmed.

By: Edwards, J.

Hoffman, P.J. and

Farmer, J. concur

_____

_____

_____

JUDGES

JAE/d1129

[Cite as *In re Shugert*, 2012-Ohio-1805.]

IN THE COURT OF APPEALS FOR GUERNSEY COUNTY, OHIO

FIFTH APPELLATE DISTRICT

IN THE MATTER OF:                    :
                                     :
    KYLA SHUGERT                      :
                                     :
                                     :
                                     :        JUDGMENT ENTRY
                                     :
                                     :
                                     :
                                     :        CASE NO. 11CA08


For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Guernsey County Court of Common Pleas, Juvenile Division, is affirmed.  Costs assessed to appellant.


_____

_____

_____

JUDGES